## Case No. 15,036.

UNITED STATES v. EIGHT HUNDRED CADDIES OF TOBACCO.

[2 Bond, 305.] [1]

District Court, S. D. Ohio. Oct. Term, 1869.

INTERNAL REVENUE—TOBACCO—FALSE RETURN—FALSE BRANDS—INNOCENT PURCHASER.

1. In an information, claiming a forfeiture of tobacco, in two distinct charges, based on two provisions of the internal revenue laws, the district attorney may claim a judgment on either or both, as the evidence may justify, and the court will not require him to elect on which he will rely.

2. Tobacco, as an article subject to taxation, is included in section 9 of the act of July, 1866 [14 Stat. 101], and may be forfeited for fraud perpetrated by the manufacturer, even in the possession of a purchaser, without knowledge of the fraud.

3. This is a stringent but necessary provision in the internal revenue system.

4. The title of the government to the property infected with fraud, vests from the time of its commission, and the taint of fraud inheres in it, even in the possession of an innocent purchaser.

5. If false brands were placed upon the caddies by a revenue officer, indicating that the legal taxes had been paid, when in fact they had not been paid, without any complicity in the fraud by the claimant, it would not be a ground

1 [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

of forfeiture, and if the jury find a forfeiture, it must be for the original fraud of the manufacturer in failing to return, or making false returns of the quantity manufactured.

Durbin Ward, Dist. Atty., and Henry Hooper, for the United States.

H. C. Whitman, Jacob D. Cox, C. W. Moulton, and H. L. Burnett, for claimant.

LEAVITT, District Judge (charging jury). The United States, in this proceeding, claim the forfeiture of eight hundred caddies of plug tobacco, as manufactured and sold in violation of the internal revenue statute. George Atkins has made himself a party to the suit, by his appearance and answer, in which he claims to be the owner of the tobacco, and denies the allegations of fraud, set forth in the information. This tobacco, it appears from the evidence, came into the possession of Atkins, the claimant, by purchase from Diehl & Anderson, a business firm in Cincinnati. Immediately after the purchase it was transferred to the warehouse of a Mr. Wall, in the city, where it has since remained and where the seizure was made. On the 12th of October last, on the complaint of Hoagland, a detective employed by the revenue department, and a witness for the government in this case, the tobacco was seized by order of Harris, collector of the first collection district of Ohio. It was brought within the jurisdiction of this court by the proper proceedings, and the question on which the jury are now to pass, is whether it is forfeited to the United States on the ground of fraud, as alleged in the information.

There are two distinct charges in the information, based on two different provisions of an internal revenue statute. Both provisions are embraced within section 9 of the act of July, 1866. The first, so far as it is necessary now to advert to it, provides, in substance, that all articles subject by law to tax, found in the possession or custody of any person, for the purpose of being removed, or sold, in fraud of the law, and with intent to evade the payment of the tax, shall be absolutely forfeited to the United States. It is also claimed by the district attorney, that the tobacco is forfeited also under the second charge in the information, based on the other provision of the act of 1866, which, in substance, is that all articles subject to tax, which shall be removed, deposited, or concealed, with intent to defraud the government of the tax, shall be forfeited. The information is so framed as to meet both provisions of the section of the law referred to.

And here it will be proper to notice a point of law presented and argued by the learned counsel for the claimant, namely, that the district attorney can not claim a forfeiture of the tobacco under both provisions of the statute on which the charges in the information are based. In other words, the claim is that the district attorney must be required to designate the particular provision on which he relies for a judgment of forfeiture, and can not rely

on both. The information does not refer in terms to the section of the law on which a forfeiture is claimed. In the first count or charge, it recites, with nearly literal accuracy, that part of section 9 on which the claim of the government is based, and the counsel contends that the district attorney can not rely on the second provision of section 9 as a basis of forfeiture, but must be restricted to the first. While it may have been proper for the counsel for the claimant, at the inception of the trial, to have moved the court for an order requiring the district attorney to elect on which of the two provisions of the law he would insist as the ground of forfeiture, the court will not, at this stage of the proceeding, make such an order. I am quite clear, however, that it is the right of the government, under this information, to claim a forfeiture under either provision of section 9, if the fraud charged is within either or both.

It is also strenuously urged by the counsel for the claimant, that tobacco is not included in the designation of articles subject to forfeiture under the first provision of that section, and that therefore the eight hundred caddies in question can not be forfeited under the information in this case. The argument in support of this position has been able, but the court cannot concur with counsel in the views which have been urged. I can not entertain a doubt that the article of tobacco, by a fair construction of section 9, is included in its terms, as forfeitable for any fraud contemplated and punished by it. The language of that section is, and was intended to be as comprehensive and far reaching as language could make it. It clearly includes all goods, wares, and merchandise, and every article subject to taxation. And although there may be other sections of the law apparently in conflict with this construction, they can not set aside the explicit provisions of section 9 yet unrepealed and in full force. The jury will have observed that the ground on which the claim of the government for the forfeiture of this tobacco is based, is that it was infected by fraud on the part of the manufacturer, subjecting it to forfeiture wherever it might be found, and into whose possession it may have passed. It is claimed by the United States, that Gaines, the manufacturer of this tobacco, failed to make returns of the quantity manufactured by him, as required by law. The statute, in plain words, requires the manufacturer to return under oath, from time to time, the quantity made, and to pay the tax imposed on it. And a failure to comply with this requirement is a gross fraud, subjecting the tobacco to forfeiture.

It will be obvious to the jury that their first inquiry will be, whether Gaines, the manufacturer, was guilty of the frauds charged? I do not propose to detain the jury by any detail of the evidence on this question, but shall leave it exclusively for their consideration. It is proper to remind the jury, that the foundation of the government's claim to a forfeiture rests on the proof of Gaines' fraud. If the fraud by him is not sustained by the evidence, there is no ground for a verdict of forfeiture of the tobacco. The title of Atkins, the claimant, in the absence of such evidence, would be clear and indisputable.

It is an important question in this case, whether, if the fraud by Gaines is established, the property is subject to forfeiture in the possession of Atkins, an innocent purchaser, without knowledge of the fraud of the manufacturer. This is an important inquiry, the answer to which may be decisive of this case. I shall present the views of the court very briefly, and without detaining the jury by a labored exposition of the character or policy of revenue laws. It is clear, however, that under the existing statutes, the property rights and interests of individuals may suffer, while the person in possession may not be chargeable with any fraud, or have any knowledge of, or complicity in it. As an illustration of this principle, I may refer to section 9 of the statute, on which the charges in this information are based. The first charge alleges substantially that the tobacco in question was held by the person in whose possession it was found "in fraud of the law," or, in other words, it was sold illicitly, without the payment of the tax, with the intent to defraud the United States. Now, upon the hypothesis that Atkins, the claimant, who was the purchaser of the tobacco, was ignorant of the fraud perpetrated by Gaines, that does not relieve the tobacco from the taint of fraud, or protect it from forfeiture, if the fraud is proved. By the words of the statute, the tobacco was forfeited to the United States from the time of the commission of the fraud, and the lien or claim of the government attaches from that time, so perfectly and so effectually, that the person guilty of the frauds has no title which he can transfer to a purchaser, though he may have no knowledge of the fraud. The fraud, by operation of law, attaches to and inheres in the property, subject to taxation, wherever it may be found. This doctrine may seem to partake of harshness and severity; and, doubtless, in its operation it may work injury to persons innocent of any intentional wrong. Yet, in all efficient systems of internal revenue, there is a necessity for its adoption and enforcement. The power of taxation is a necessary appendage of every enlightened government; and it becomes a paramount duty resting upon those administering it, when necessary, to impose taxes for the purpose of sustaining the public credit, and enabling the government to perform its constituted obligations. And laws for raising revenue for these purposes must necessarily be stringent, or if not so, they will not be efficient. Tax impositions are not ordinarily looked upon

with favor by those who are required to bear the burden. And the experience of our government, in reference to revenue laws, proves a sad laxity in the morals of the country on this subject. Men often ignore their legal and moral obligation to the government, and tax their ingenuity by resorting to all kinds of crafty devices to evade the payment of taxes imposed by law. Even those who, in other transactions, observe the obligation of honesty and fair dealing with their fellow-men, do not scruple to defraud the government. If the jury find this tobacco to be infected with fraud, I am constrained to instruct them that it is subject to forfeiture, even if Atkins, the claimant, was ignorant of, and had no participation in the fraud. Such must be the fair construction of the statute. The government has been defrauded of the legal tax on the tobacco, and it was held by the claimant "in fraud of the law."

It is, however, insisted by the district attorney, that Atkins can not be regarded in the light of an innocent purchaser of this tobacco, and that the circumstances brought to the notice of the jury, will justify them in the conclusion that he had at least an intimation of the frauds committed by Gaines. If the jury assent to this view—if they find that Atkins had just ground to presume the existence of the fraud—he would not have any, even an equitable claim to this tobacco, as an innocent purchaser; and the jury, without scruple or hesitation, would return a verdict for the United States.

It is not necessary to advert specially to the fraud charged by the government, in the use of false brands upon the caddies containing this tobacco. There is, perhaps, evidence sufficient to justify the jury in finding that false brands were used, and there can be no question that the use of such brands knowingly is a criminal act, and would constitute a ground of forfeiture. But it would seem probable that these brands were put on by McDonald, a revenue official, acting in collusion with Gaines. There is no claim, however, that Atkins had any agency in, or knowledge of, this criminal act, and he ought not to be held responsible for it. The criminality attaches to the corrupt and unfaithful officer, in putting on brands falsely indicating the payment of the just taxes, knowing they had not been paid. If the claim of the government to a forfeiture rested solely on this ground, it would not be sufficient to justify a verdict against the claimant. If the jury find for the United States, their verdict must be based on the charge of the original fraud by Gaines.

The jury will have noticed there is a good deal of conflict in the evidence in this case. The credibility due to the testimony of witnesses being exclusively for the jury, I have only to remark it will be their duty, if practicable, to reconcile the testimony consistently with the truthfulness of the witnesses, and if this can not be done, they are to decide to whom credit is due.